## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

## MARCH TERM, 1900.

*(Continued from Volume 83.)*

STATE OF MISSOURI, at the Relation of IDA B. PECK, Respondent, v. EDWARD A. HERMANN, Sewer Commissioner of the City of St. Louis, Appellant.

### St. Louis Court of Appeals, March 27, 1900.

1. **Ordinances**: CITY OF ST. LOUIS: CHARTER: CONSTRUCTION OF ORDINANCES: SEWER SYSTEM. By article 5, sections 20 and 30, and article 3, section 26, paragraph 2, the city of St. Louis is clothed with express power to establish a general sewer system and to regulate the use of the same. Under the power to regulate the city has the authority to impose any reasonable terms and conditions upon which citizens may connect their property with its sewers.

2. ———: ———: ———: ———. The charter provisions of the city of St. Louis for security to the city for works of construction are necessarily exclusive and can not be changed, added to or decreased by ordinance.

(1)

3. ——— : ——— : ———. And ordinance 1630, revised ordinances of the city of St. Louis, is not one to regulate the use of sewers, but its purpose is to force payment of private debts, and this is beyond the jurisdiction of the city, and is null and void.

Appeal from the St. Louis City Circuit Court.—*Hon. Pembrook R. Flitcraft*, Judge.

AFFIRMED.

*B. Schnurmacher* and *Chas. Claflin Allen* for appellant.

(1) The city of St. Louis has express charter power to establish a general sewer system, to construct sewers, and to regulate the use of the same. Charter, art. 6, secs. 20-23; art. 3, sec. 26, par. 2. And also implied power. Dillon's Mun. Corp. [4 Ed.], sec. 805. (2) Having constructed its sewers the city may impose any reasonable terms and conditions upon which private citizens may use the same. Dillon's Mun. Corp. [4 Ed.], secs. 681 and 805; City v. Green, 7 Mo. App. 468; s. c. affirmed, 70 Mo. 562; City v. Woodruff, 71 Mo. 92; City v. Webber, 44 Mo. 547; Provident Inst. v. Mayor, etc., Jersey City, 113 U. S. 506. (3) Although district sewers are constructed at the expense of the property benefited thereby, the city, as the contracting party, is interested in the payment for such works, and may exact such security therefor as may be reasonable.

*Julian Laughlin* and *Thos. S. King* for respondent.

(1) The charter of the city of St. Louis prescribing the method of collection of special tax · bills, is necessarily exclusive, and the municipal assembly has no power to prescribe a different method. Charter City of St. Louis, art. 6, secs. 22, 24-25; Thomson v. City of Boonville, 61 Mo. 282; City of Moberly v. Wight, 19 Mo. App.

269. The charter of the city of St. Louis prescribing that tax bills should be delivered to the contractor and collected by him, the municipal assembly has no power to provide for their collection by its officers at the expense of its taxpayers. Knapp v. Kansas City, 48 Mo. App. 485. (2) The charter of the city of St. Louis providing for a proceeding in court to establish the lien of the tax bill, with opportunity to the property owner to put in issue the entire matter, as to whether the work was done, whether it was such as was properly chargeable against the abutting property, or upon a proper showing to reduce the amount of the recovery, the city has no power to deprive the property owner of his day in court, and to require him to pay the tax bill, as issued, though invalid in whole or part. City v. Bell Telephone Co., 96 Mo. 623; Sedalia Gaslight Co. v. Mercer, 48 Mo. App. 644. (3) The ordinance (Rev. Ord., City of St. Louis, 1892, sec. 1630), is unreasonable, unjust and oppressive and therefore void, in subjecting the property owner to a double penalty, he being compelled to pay fifteen per cent per annum as a penalty, and being at the same time by this ordinance, deprived of the use of the sewer.

BLAND, P. J.—From the printed statement and brief of the able city counselor, we extract the following clear, full, and correct history of the proceeding in the circuit court:

## Statement.

This is a mandamus proceeding instituted in the circuit court of the city of St. Louis. From a judgment awarding a peremptory writ against him, appellant brings the case here by appeal.

Relator is the owner of lot 17, in city block 4539, of the city of St. Louis, fronting fifty feet on Cates avenue, on

which lot is erected a brick dwelling house containing bath
tubs, wash stands, water closets and sinks.

On September 13, 1899, Mrs. Peck, the respondent, ap-
plied to appellant, who is the sewer commissioner of the city
of St. Louis, for a permit to lay a drain pipe from her prem-
ises to a district sewer in Cates avenue, and to connect her
said premises for drainage purposes with said sewer. Ap-
pellant refused to issue said permit, basing his action upon
section 1630 of the revised ordinance of 1892 of the city of
St. Louis, wherein it is provided that no permit for a sewer
connection shall be issued if the property to be drained, or
any part of it, was assessed for the construction of the dis-
trict sewer, until such assessment shall have been paid, and
the fact that respondent's said property had been assessed
for its due share of the cost of constructing the district
sewer with which she sought to connect, and into which she
proposed to drain, and that such assessment had never been
paid and was still owing."

### The Pleadings.

Respondent filed her petition in the circuit court on
September 13, 1899. After averring her ownership of the
lot of ground upon which is erected the dwelling house
known as No. 6049 Cates avenue, and that under and along
Cates avenue, in front of and accessible to said dwelling
house, there is a district sewer, under the supervision of ap-
pellant, as sewer commissioner, it is averred that respondent
made application to appellant for a permit to lay a drain
pipe to receive the drainage from her premises and to con-
nect said pipe from her premises to and with said district
sewer. That she requested said permit to be issued to a
registered and bonded drain-layer; that her application was
in due form and in accordance with the rules and regulations

of the sewer department, and that in conformity with the ordinances bearing upon the matter, but that appellant without cause, and wrongfully refused to issue a permit. It is further averred that the uses of said dwelling house required that the sewage be discharged therefrom, and that under the ordinances of the city of St. Louis all persons are required to discharge their sewage into a public or district sewer whenever any such sewer is accessible, and are subject to fine and imprisonment for a failure so to do. The petition concludes with a prayer for a writ of mandamus commanding the sewer commissioner to issue the desired permit.

"An alternative writ was issued following the averments of the petition or suggestion therefor.

In due time a return was filed to said alternative writ, in which return appellant first denies each and every allegation contained in the alternative writ, and in the petition therein set forth. For affirmative matter the return sets forth in substance that all necessary steps were taken for the establishment of the Hodiamont avenue sewer district number one, and the construction of the district sewers therein; the various steps taken in the drafting, recommending the passage of the necessary ordinances being set forth in detail.

It is further averred that the district sewer constructed in said Hodiamont avenue sewer district number one extends along Cates avenue in front of the property which respondent claims to own; that after the completion of the district sewers in said sewer district, special tax bills were made out for their construction, in accordance with the charter, and ordinance provisions relating thereto, and that among other bills one was made out against the property of respondent, in the amount of $80.26, and was thereupon, with other bills, delivered to the contractors who had constructed said sewers; that this tax bill had never been paid

by respondent, or by any person for her, but on the contrary remains still unpaid, and is the subject of litigation in the circuit court of the city of St. Louis, where an action against respondent to enforce the payment of said bill, is now pending.

The return further recites that section 1630 of the revised ordinance of the city of St. Louis expressly provides that no permit for a sewer connection shall be issued "if the property to be drained by the proposed sewer, or any part thereof, has ever been assessed for the construction of district sewers, until such assessment shall be paid." That because of the nonpayment of the special tax bill issued against respondent's property appellant denied her request for a permit to make said sewer connection.

To all of the affirmative matters of the return respondent filed a demurrer, basing the same upon the following grounds:

"1.    That the same does not set forth facts sufficient to excuse the sewer commissioner from performing the duties directed by the alternative writ;

2.    That the same is insufficient;

3.    That section 1630 pleaded by appellant as a justification for the refusal of the permit, is not authorized by the charter of the city of St. Louis, but conflicts therewith; and

4.    That the ordinance conflicts with the constitution of the United States and with the constitution of Missouri 'in that it attempts to deprive persons of property without due process of law.' "

The demurrer was sustained by the court, appellant duly excepting. This left in the return merely the general denial.

### The Hearing.

The case was reached for hearing on November 23, 1899. It was agreed that respondent was the owner of the

real estate and premises described in her petition; that she made application to appellant as sewer commissioner for a permit to connect her premises with the district sewer in Cates avenue; that appellant refused to issue the permit for the reason that respondent at the time was indebted on the special tax bill issued for the construction of said district sewer; that appellant's action was based on section 1630 of the revised ordinance of the city of St. Louis of 1892, which section provides that "No permit for a sewer connection under the preceding section shall be issued, if the property to be drained by the proposed sewer, or any part thereof, has ever been assessed for the construction of district sewers, until such assessment has been paid; but in cases where direct evidence of payment can not be produced, a permit may be issued if the owner of the property executes and files with the city register a good and sufficient bond for twice the amount of the assessment, guaranteeing the uncontested payment of the assessment upon presentation of the original special tax bill; or if more than ten years have elapsed since the date of the tax bill it may be presumed that the bill was paid, in the absence of evidence or information to the contrary."

It was further agreed that the special tax bill against respondent's property had been delivered to the contractors who built the sewer, and that the contractors gave the city of St. Louis a receipt therefor, as provided by article 6 of the city charter; that suit was brought thereon, and is now pending.

Thereupon respondent offered in evidence section 1628 and section 1629 of the revised ordinance, the first of which provides that all sewers or drains connecting with or discharging into public or district sewers, or lying wholly or in part in any public street, alley or highway, shall be constructed in conformity with the regulations of the sewer

commissioner and under his general supervision; and the second of which sections provides that no persons shall excavate around or under any public, district or private sewer, nor make connections therewith except under and in accordance with the terms and conditions of a permit so to do to be issued by or with the authority of the sewer commissioner.

Respondent's counsel thereupon offered in evidence also sections 442, 434 and 435 of the revised ordinance, to the admission of each of which appellant objected and duly excepted at the time.

Section 442 provides that every water-closet or privy connected and used in any dwelling house within the city limits, which water-closets or privies are not connected with some public district, or private sewer adjoining the premises upon which such building is erected, and properly connected with the public sewer system of the city, shall be deemed a nuisance.

Section 434 provides for the abatement of nuisances by the health commissioner and the board of health, and section 435 provides a penalty against any person failing or refusing to obey the order of the health commissioner in relation to the abatement or discontinuance of a nuisance.

Upon these admissions of fact and these ordinance provisions, the court, on November 24, 1899, found the issues in favor of respondent, and entered its judgment against appellant, granting a peremptory writ of mandamus as prayed.

In due time appellant filed his motion for a new trial, which having been overruled, he duly excepted and properly and in proper time brought the case here by appeal.

I.   By article 6, sections 20 and 23, and article 3, section 26, paragraph 2, the city of St. Louis is clothed with express power to establish a general sewer system, and to regulate the use of the same.   Under the power to regulate, the city has the unquestioned authority to impose any

reasonable terms and conditions upon which citizens may connect their property with its sewers. City of St. Louis v. Green, 70 Mo. 562; City of St. Louis v. Woodruff, 71 Mo. 92; City of St. Louis v. Webber, 44 Mo. 547; Provident Inst. v. Mayor, etc., 113 U. S. 506; Dillon on Mun. Corp. [4 Ed.], secs. 681 and 805. It may also be conceded that the city being one of the contracting parties to all contracts for the construction of public sewers, is morally interested in payment for the work, notwithstanding their construction is made at the expense of the property benefited, and might exact security therefor, if none were given by the city charter. School District v. Livers, 147 Mo. 580; St. Louis Public Schools v. Woods, 77 Mo. 197. This security, however, is provided for by the city charter. Section 6, article 22 of that instrument after providing for the construction of district sewers and for the assessment of the cost thereof against property owners in the district, provides for the issuance of special tax bills therefor "against each lot in the district in the name of the owner thereof, which shall be collected in the manner hereinafter prescribed." Section 24 provides that such tax bills shall be delivered to the contractor for collection "and his receipt taken in full of all claims against the city on account of said work." Section 25 provides that such tax bills shall be a lien upon the property, and for a penalty of fifteen per cent if it is not paid within a certain time, and that the tax bill may be collected of the owner of the land in the name of and by the contractor, as any other claim, in any court of competent jurisdiction. These provisions of the charter exempt the city, though a party to the contract, from all liability in any event for the costs of construction, and at the same time gives to the contractor ample security for his pay, and insures prompt payment by a heavy penalty for failure to make payment within a given time after the work is done

and the tax bill has been issued. If section 1630 of the ordinance is intended to provide further security for payment for construction, then it is an attempt upon the part of the city to expand and enlarge its charter, and to increase and add to the security which the charter has provided. The charter provisions for security are necessarily exclusive and can not be changed, added to or decreased by an ordinance. Thomason v. City of Boonville, 61 Mo. 282; City of St. Louis v. Bell Telephone, 96 Mo. 623; City of Moberly v. Wight, 19 Mo. App. 269.

II.   Appellant further insists that the section (1630) may be upheld under the general power of the city to pass ordinances regulating the use of the public sewer system. If it be conceded that under the power to regulate, the city may exact the payment of a sum of money for the privilege of connecting a private sewer with a public one, to make such exaction a valid regulation, the sum taken should be for the benefit of the public sewers, to be used in making repairs, for inspection or to defray some other expense which the city may be put to, to maintain and keep the system in good repair and working order, and not for the use and benefit of some private person. The sum demanded of the respondent under the ordinance was not for the benefit of the sewer system, not for the benefit of the city, not to pay any debt or discharge any obligation for which the city was legally or morally bound, but a demand that they should first pay a private debt due to a private individual and to discharge a lien on their property. The ordinance is not one to regulate the use of sewers, but its purpose is to force payment of private debts. This is beyond the jurisdiction of the city, and we hold the ordinance null and void, and affirm the judgment of the learned trial judge. All concur.